IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01673-PAB-MJW

GARRETT GISSLER,

    Plaintiff,

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,

    Defendant.
_____

# ORDER
_____

This matter is before the Court on Pennsylvania Higher Education Assistance Agency's Motion for Summary Judgment [Docket No. 67]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

Plaintiff Garret Gissler claims that he was harmed by defendant Pennsylvania Higher Education Assistance Agency's credit reporting. Plaintiff brings claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and the Colorado Uniform Credit Code, Colo. Rev. Stat. § 5-5-109(2) ("Colorado Credit Code").

Defendant is the loan servicing company for plaintiff's student loans. Defendant's Statement of Undisputed Material Facts ("DSUMF") 3; Docket No. 67 at 2, ¶ 3.[2] Plaintiff failed to make payments on his student loans from November 2012 to

---

[1] The following facts are undisputed unless otherwise indicated.

[2] Several credit bureaus were previously defendants in this action, but they have been dismissed. *See* Docket Nos. 56, 62, 63, 76.

April 2013. DSUMF 4; Docket No. 67 at 3, ¶ 4. Defendant did not report the loan as delinquent in November or December 2012 because the Department of Education, which owned the loan, had directed defendant to not report delinquencies to the credit reporting agencies until a consumer is 60 or more days late. DSUMF 9; Docket No. 67 at 4, ¶ 9. However, given the passage of 60 days, defendant reported that plaintiff's January to April 2013 payments were late. DSUMF 4; Docket No. 67 at 3, ¶ 8; *see, e.g.*, Docket No. 67-13 at 9, ¶ 46 ("[Defendant's] transmission on January 31, 2013 reported to the credit bureaus that Plaintiff was '60 DAYS' delinquent on the Student Loan."). On May 2, 2013, plaintiff requested a forbearance that would cover the late payments from November 2012 to April 2013. DSUMF 5; Docket No. 67 at 3, ¶ 5. On May 3, 2013, defendant approved plaintiff's request. *Id*. As part of the forbearance, defendant agreed to remove the delinquencies on plaintiff's loan and eliminate the late fees. DSUMF 6; Docket No. 67 at 3, ¶ 6. At the time plaintiff asked for a forbearance, plaintiff did not ask that credit reporting regarding his missed payments be changed and defendant did not say it would do so. DSUMF 7; Docket No. 67 at 3, ¶ 7.

Approximately three years later, plaintiff filed disputes with credit reporting agencies. DSUMF 14; Docket No. 67 at 4, ¶ 14. These disputes took the form of letters that stated:

> The following information needs to be verified and deleted from my credit report as soon as possible:
>
> 1) Late payments up to 150 days from January 2013 to April 2013
>
> This account was granted forbearance for the above time period. Please see the documents enclosed with this letter.

DSUMF 17; Docket No. 67 at 5, ¶ 17; see Docket No. 67-20 at 2. The credit reporting agencies referred these disputes to defendant for investigation. DSUMF 32; Docket No. 67 at 8-9, ¶ 32.

At the beginning of the investigation, defendant temporarily marked plaintiff's account with the Compliance Condition Code "XB," which indicates that the account information has been disputed and an investigation is pending. DSUMF 21; Docket No. 67 at 6, ¶ 21. Defendant investigated the disputes, confirmed that plaintiff did not make loan payments from November 2012 to April 2013, and confirmed that plaintiff had been granted a forbearance covering the delinquent months, but defendant did not change its reporting regarding the missed payments. DSUMF 35-36; Docket No. 67 at 9-10, ¶¶ 35-36. Defendant's decision not to change its reporting was based on defendant's conclusion that the reporting was accurate and on defendant's unwritten policy that, for Department of Education loans, defendant will not change its credit reporting as a result of a forbearance granted after payments have already been missed. DSUMF 10; Docket No. 67 at 4, ¶ 10; DSUMF 36; Docket No. 67 at 10, ¶ 36. This policy was directed by the Department of Education and applies to all Department of Education loans. DSUMF 11, Docket No. 67 at 4, ¶ 11.[3] Defendant has a different

---

[3]Although plaintiff generally disputes DSUMF 10, 11, and 36, plaintiff does not dispute the portion of DSUMF 10 stating the Department of Education has a policy that, for its loans, it will not change prior credit reporting even if a forbearance is later granted that retroactively covers the delinquent months. See Docket No. 75 at 3, ¶¶ 10, 11. Similarly, plaintiff does not dispute those portions of DSUMF 10 and 36 that defendant acted pursuant to this policy when it did not change its credit reporting for January to April 2013. See Docket No. 75 at 3, ¶ 10, and 5, ¶ 36. Plaintiff does deny that defendant "has a policy to not change credit reporting after a forbearance," Docket No. 75 at 3, ¶ 10, but bases its denial on defendant having a different policy for loans owned by Chase and Bank of America. Id. In fact, plaintiff admits that, "for Dept. of

3

policy for loans owned by Chase and Bank of America.  Docket No. 75-2 at 6, 48:9-19.  For such loans, defendant does change the credit reporting when it grants a retroactive forbearance.  *Id*.; *see also* Docket No. 78 at 6 ("[Defendant's] credit reporting policy for retroactive forbearances is dependent on the owner of the loan.").

When a credit reporting agency refers a dispute it has received to defendant for investigation, defendant ascertains the substance of the dispute and reviews any documents supplied by the agency.  DSUMF 20; Docket No. 67 at 6, ¶ 20.  Defendant compares the dispute with the account records, including the payment, forbearance, and credit reporting history.  *Id.*  At the beginning of the investigation on a referred complaint, defendant marks the account as in dispute by using the Compliance Condition Code ("CCC") of "XB," which means "Account information disputed by consumer under the Fair Credit Reporting Act."  Docket No. 67 at 10, ¶ 39; *id*. at 16.  Defendant followed this procedure when investigating plaintiff's complaint.  DSUMF 34; Docket No. 67 at 9, ¶34.  When defendant completed its investigation, defendant changed the CCC to code "XH," meaning "Account previously in dispute – investigation completed, reported by data furnisher."  DSUMF 40; Docket No. 67 at 11, ¶ 40, 16.  Defendant claims it did not change the CCC to "XC," meaning "Completed investigation of FCRA dispute – consumer disagrees," because plaintiff never notified defendant that he disagreed with the investigation results.  Docket No. 67 at 11.

On January 27, 2017, defendant filed its motion for summary judgment.  Docket No. 67, ¶ 41.

---

Education loans, [defendant] will not change the credit reporting after a forbearance."  *Id.*

4

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead

must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)). "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party." *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

## III. ANALYSIS

### A. Fair Credit Reporting Act Claim

The FCRA requires certain actions of credit reporting agencies and furnishers of information to such agencies. Relevant here, 15 U.S.C. § 1681s-2(b)(1) requires a furnisher of credit information to conduct an investigation after receiving notice from a credit reporting agency that a customer disputes the accuracy of information that the furnisher of credit information provided to a credit reporting agency. Specifically, after receiving notice of a dispute from a credit reporting agency, a furnisher of information must "(1) investigate the disputed information; (2) review all relevant information provided by the [credit reporting agency]; (3) report the results of the investigation to the [credit reporting agency]; (4) report the results of the investigation to all other [credit reporting agencies] if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable." *Pinson v.*

6

*Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (unpublished) (citing 15 U.S.C. § 1681s-2(b)). A consumer may bring a private cause of action against a furnisher of information for its failure to fulfill the duty to conduct a reasonable investigation. *Cousineau v. Unifund CCR Partners*, No. 10-cv-03109-CMA-KLM, 2012 WL 3135687, at *3 (D. Colo. July 31, 2012). "Summary judgment is proper when 'the reasonableness of the defendant's procedures is beyond question.'" *Id*. (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

### 1. *Existence of a Cause of Action*

Defendant argues that plaintiff has no private right of action under 15 U.S.C. § 1681s-2(a) to challenge defendant's policy regarding reporting missed loan payments for persons granted forbearances. Docket No. 67 at 12-13. The Court does not read the amended complaint to bring a claim under § 1681s-2(a). Plaintiff challenges the reasonableness of defendant's investigation of his complaints to the credit reporting agencies under 15 U.S.C. § 1681s-2(b), Docket No. 48 at 2, ¶ 14, which creates a private right of action in these circumstances.

### 2. *Investigation of the Dispute*

Defendant argues that its investigation was reasonable because its procedures for conducting the investigation are "detailed and complete" and include consideration of account records and notetaking by the investigator. Docket No. 67 at 15. Defendant claims that, because its investigation was thorough and applied its policies to "confirm that the credit reporting at issue accurately reflected the status of the loan as set forth in [defendant's] records," the investigation was reasonable. *Id*. In particular, after it

completed its investigation, defendant changed the CCC from the "XB" code, meaning "Account information disputed by consumer under the Fair Credit Reporting Act," to the "XH" code, which indicates: "Account previously in dispute – investigation completed, reported by data furnisher." *Id*.; *see also* Docket No. 67-39 at 3.

In arguing that summary judgment is inappropriate, plaintiff does not challenge the reasonableness of defendant's investigative procedures. Moreover, plaintiff does not challenge the fact that he did not make loan payments between November 2012 and April 2013. He concedes that defendant's credit reporting concerning the payments missed from January 2013 to April 2013 was "technically accurate," Docket No. 75 at 8, but claims that all of the reporting after the forbearance was inaccurate. *Id*. In other words, plaintiff does not complain about the process used in the investigation or the fact that the investigation determined that plaintiff did not make certain loan payments. Rather, plaintiff believes that the legal effect of defendant granting a forbearance was to make it inaccurate for defendant to report the missed payments after the forbearance. *Id.* at 10.[4]

---

[4] Plaintiff argues that Trans Union's investigation, which reached a different result, and the decision of credit reporting agencies, who were formerly defendants in this case, to change their reporting after the lawsuit was filed is somehow probative. Docket No. 75 at 8-9. It is unclear why these later actions by separate entities following distinct procedures would create a genuine issue of material fact as to whether defendant's investigation was unreasonable. An investigation can be reasonable even if it returns inaccurate results. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) ("We emphasize that the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."). Moreover, actions that co-defendants took as part of settling with plaintiff are irrelevant to the reasonableness of defendant's investigation.

In support of his theory regarding the legal effect of a forbearance, plaintiff argues that it is "inaccurate to report throughout 2016 that Gissler was late during Jan. 2013 - May 2013 because Defendant <u>agreed</u> that those payments were no longer outstanding, and were suspended to a <u>later</u> date in time, i.e. re-capitalized back onto [sic] the loan . . . ." *Id*. at 8 (emphasis in original). Plaintiff then concludes "as a matter of law, once [defendant] agreed that the January - May 2013 payments were suspended until a later time in the future, Plaintiff was no longer late, and it was inaccurate for [defendant] to continue to report the payments as late." *Id*. at 10. Defendant cites no case law support for his theory about the legal effect of a forbearance. The fact that defendant was willing to forgive late fees does not mean that plaintiff's payments were not late. And the fact that defendant was willing to roll the payments and interest into the principal balance does not mean that plaintiff's payments were not late. Instead, those actions simply meant that defendant agreed to forego certain of its rights in order to get plaintiff back on track.

The explanation of the forbearance that defendant provided to plaintiff is as follows:

> Forbearance: If you do not qualify for a deferment, you may be able to temporarily stop making payments as long as you intend to repay your loans. This option is called forbearance. During a period of forbearance, interest for which you are responsible continues to accrue on all loan types while you are temporarily permitted to stop making payments or to make reduced payments. You must request the forbearance and provide any required documentation. Any interest that you do not pay during the forbearance will be capitalized (added to the principal balance of your loans). Capitalization of interest increases the total cost of your loans.

Docket No. 67-11 at 5.

9

Nothing in this explanation supports plaintiff's theory. The explanation does not say that defendant will change its previous credit reporting regarding payments that were missed, that defendant will not in the future report the fact of earlier missed payments, or that forbearance results in the expungement of the fact of missed payments. Plaintiff provides no law, regulation, practice, or custom that suggests defendant had a legal obligation, after granting plaintiff a forbearance, not to continue reporting the historical fact that plaintiff did not make certain loan payments.

Plaintiff also argues that defendant's investigation was unreasonable because defendant had inconsistent policies regarding credit reporting for retroactive forbearances. Specifically, plaintiff claims that "if [defendant] does it the way that Plaintiff claims in some cases (for Chase and Bank of America), but not in other cases (Dept. of Education Loans), then this at a minimum creates a factual dispute as to which version is actually accurate." Docket No. 75 at 10. However, in order for plaintiff to claim that defendant's policy for Department of Education loans is "inaccurate," he must first demonstrate that the legal effect of granting a forbearance is contrary to the Department of Education's policy for its loan. As noted above, plaintiff has not done this. As a result, the fact that Chase and Bank of America have a different policy that defendant follows is not relevant to defendant's decision to follow the Department of Education's policy regarding plaintiff's DOE loan or to the reasonableness of defendant's investigation.

The court in *Pundt v. Select Portfolio Servicing, Inc.*, 2012 WL 2312074, at *1 (N.D. Iowa June 18, 2012), addressed a similar situation in which a homeowner was granted a forbearance after missing several payments. A furnisher reported these

missed payments to credit reporting agencies. The homeowner did not claim that the furnisher's investigation was insufficiently rigorous; rather, he argued that, because he had been granted a forbearance and thereafter made his payments on time, the furnisher was required to change its negative credit reporting. *Id*. at *2. The court granted summary judgment to the furnisher, finding that "plaintiff has not come forward with a disputed issue of material fact as to the reasonableness of defendant's investigation into a claimed factual inaccuracy, which is his burden under the FCRA." *Id*. at *2. Here, too, there are no disputed material facts about the reasonableness of defendant's investigation.

Plaintiff complained to the credit reporting agencies that the following information on its reports was inaccurate: "Late payments up to 150 days from January 2013 to April 2013." Plaintiff, however, admits that this information is accurate. His theory that forbearances have the legal effect of re-writing the past is unsupported. Hence, there is no reason to conclude that defendant's credit reports were "inaccurate or incomplete or cannot be verified after [defendant's] reinvestigation," 15 U.S.C. § 1681s-2(b)(1)(E).

### 3. Reporting of the Account's Dispute Status

The Court finds that a genuine dispute of material fact exists in relation to plaintiff's reporting of the loan's dispute status. Defendant acknowledges that a furnisher can be held liable for failing to report that an account is in dispute. Docket No. 67 at 16 (citing *Collins v. BAC Home Loans Servicing LP,* 912 F. Supp. 2d 997, 1011 (D. Colo. 2012)). While defendant claims that plaintiff "never contacted [defendant] to advise [defendant] that he disagreed with the investigation results," DSUMF 38, Docket No. 67 at 10, ¶ 38, defendant cites no support for the proposition that it could assume

11

plaintiff agreed with its investigation. Instead, defendant asserts that, because "FCRA does not delineate any duty for a furnisher to assume that the consumer disagrees," Docket No. 78 at 7, "it is reasonable for [defendant] to use the 'XH' code." *Id*. Whether or not it was reasonable for defendant to use the "XH" code is a question for the jury.[5] As the Tenth Circuit has noted, "FCRA's requirement that furnishers of information correct 'incomplete or inaccurate' information, 15 U.S.C. §1681s-2(b)(1)(D), extends not only to false information, which 'is clearly inaccurate,' but to information provided 'in such a manner as to create a materially misleading impression' as well." *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1186 (10th Cir. 2013) (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)); *see also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading.") Defendant's use of the "XH" code, without noting plaintiff's continuing dispute of the accuracy of the reporting, could create a materially misleading impression to a credit reporting agency or a lender.

Therefore, the Court will grant summary judgment to defendant on plaintiff's claim under 15 U.S.C. § 1681s-2(b) regarding defendant continuing to report that

---

[5]Defendant claims that a "consumer could hypothetically submit a dispute on every late credit account for the sole purpose of avoiding the inclusion of those accounts in his or her credit score in perpetuity." Docket No. 78 at 8. The jury will be able to consider this argument in determining the reasonableness of defendant's use of the "XH" code.

plaintiff had missed loan payments, but deny summary judgment regarding the reporting of the account's dispute status.

## B. Colorado Credit Code Claim

Defendant argues that plaintiff's state law claim pursuant to Colo. Rev. Stat. § 5-5-109(2) is preempted by 15 U.S.C. § 1681h(e), which bars claims based on reporting information to credit reporting agencies "except as to false information furnished with malice or willful intent to injure [a] consumer." In order to avoid preemption, plaintiff must present substantial evidence that defendant acted with malice or intent to injure plaintiff when it reported the debt as late or reported the debt without reporting that it is disputed. *Greenwood Tr. Co. v. Conley*, 938 P.2d 1141, 1150 (Colo. 1997) ("Hence, the disputed factual issue presented is whether Discover acted with malice or willful intent to injure when it reported the debt without reporting that the debt was disputed."). "Cases interpreting the term 'malice' in § 1681h(e) have borrowed the definition used in other federal caselaw dealing with defamation: knowledge that a statement is false or reckless disregard for whether a statement is false or not." *Id*. at 1149 (citing *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir. 1980)).

Plaintiff cannot base his Colorado Credit Code claim on defendant's reporting of late payments since plaintiff has failed to show that the late payment information was false. However, a reasonable jury could conclude that defendant's use of the "XH" code, without indicating that plaintiff disputed the conclusion of that investigation, shows reckless disregard for whether defendant knew that plaintiff did not dispute the results of the investigation. *Conley*, 938 P.2d at 1150 (finding no preemption where the

"evidence suggest[ed] that Discover actually knew about Shaw's dispute but nonetheless reported the debt to Equifax without disclosing the dispute."). Thus, the Court will grant summary judgment on plaintiff's Colorado Credit Code claim insofar as it is based on defendant reporting the debt as late, but finds that disputed issues of material fact preclude summary judgment on plaintiff's Colorado Credit Code claim insofar as it is based on defendant's reporting of the account's dispute status.

### C. Actual Damages

Defendant argues that plaintiff cannot show actual damages because he has not identified any credit opportunities that were lost after defendant completed its investigation in March 2016, because he had other negative information on his credit report that may have contributed to any damages, and because plaintiff intends to rely on his own testimony regarding emotional distress for which he did not seek medical treatment. Docket No. 67 at 19-20. As to lost credit opportunities, plaintiff claims that Stevinson Toyota pulled his credit report on June 15, 2016 when he applied for an auto loan, which caused him embarrassment. Docket No. 75 at 16. Plaintiff also states that he was denied a loan with SoFi because of "delinquent past or present obligations with others." *Id.*

Plaintiff argues that "reporting a consumer as late would substantially lower their [sic] credit score, which is a type of damage." *Id.* at 17. *See Fregoso v. Wells Fargo Dealer Servs., Inc.*, 2012 WL 4903291, at *7 (C.D. Cal. Oct. 16, 2012) (holding a defendant's failure to report an entry was disputed was sufficient evidence of causation where it was undisputed that the report had a negative impact on the plaintiff's credit

score, notwithstanding the existence of other derogatory entries). However, plaintiff fails to offer any evidence of actual damages caused solely by use of the "XH" code. Plaintiff argues that, "if an account is disputed, the credit bureaus do not count the trade line against the consumer's score." *Id.* at 13 (citing *Saunders*, 529 F.3d at 150). But the court in *Saunders* was simply referring to evidence presented in that case, which plaintiff has not presented here. As noted in *Llewellyn*, given defendant's motion seeking summary judgment on the issue of actual damages causation, the plaintiff has "the affirmative duty of coming forward with evidence supporting his claim that [defendant's] alleged inaccurate report caused him harm." 711 F.3d at 1181 (quoting *Cahlin v. GMAC*, 936 F.2d 1151, 1161 (11th Cir. 1991). Plaintiff has not shown any harm specific to defendant's use of the "XH" code. Thus, the Court will grant summary judgment to defendant on plaintiff's claim for actual damages.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Pennsylvania Higher Education Assistance Agency's Motion for Summary Judgment [Docket No. 67] is **GRANTED** in part and **DENIED** in part as set forth in this order.

DATED September 28, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

15